[Civ. No. 47558. Second Dist., Div. Three. Aug. 25, 1976.]

BEECH AIRCRAFT CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
KATHERINE MÁRIE AANESTAD, as Administratrix, etc., et al.,
Real Parties in Interest.

COUNSEL

Gibson, Dunn & Crutcher, Sherman S. Welpton, Jr., Robert Forgnone and Dale F. Kinsella for Petitioner.

No appearance for Respondent.

Magana & Cathcart, Brian R. Magana, Kern & Wooley, James I. Michaelis, Kirtland & Packard and E. A. Tharpe III for Real Parties in Interest.

OPINION

POTTER, J.—Petitioner Beech Aircraft Corporation (hereinafter "Beech") seeks a writ of mandate compelling the superior court to grant its motion for summary judgment in three consolidated cases wherein Beech sought orders declaring (1) New Mexico law "the applicable law

in determining the rights and liabilities of the parties," and (2) that under New Mexico law wrongful death damages "arising out of the death of a passenger on a public conveyance may only be recovered from the common carrier which owned the conveyance."

### *Statement of the Case[1]*

The parties to the consolidated cases involved in this proceeding are Beech, the producer and manufacturer of a certain Beechcraft Queenair Aircraft; Adams-Rite Manufacturing Company (hereinafter "Adams-Rite"), the designer and manufacturer of a door latching mechanism used in the Queenair Aircraft; Ross Aviation, Inc. (hereinafter "Ross"), the owner and operator of the particular Queenair Aircraft,[2] Katherine Marie Aanestad, the administratrix of the estate of Bruce Arthur Bean (hereinafter "Aanestad/Bean"), a passenger killed when the Beechcraft plane crashed, and Janet Eugenio Clark, the administratrix of the estate of Richard T. Zettel, the pilot of the plane also killed in the crash (hereinafter "Clark/Zettel").

The aircraft crashed on May 19, 1972, near the Albuquerque International Airport in Albuquerque, New Mexico, killing the pilot, Zettel, and all 8 passengers, including Bean. The alleged cause of the crash was the defective design of the aircraft and the defective door latching mechanism. The nose baggage compartment door is so located that, when opened, it intersects the arc of the aircraft's left propeller. Though there was some dispute as to whether the door was latched prior to take-off (real parties in interest contend the door was latched while petitioner contends the contrary), all parties agree that when airborne the door opened, striking the propeller, whereupon the plane "stalled, spun and crashed."

Both administratrixes are residents of California, while decedents Bean and Zettel were residents of New Mexico. Ross is a Delaware corporation with its principal place of business either in Albuquerque, New Mexico, according to petitioner, or Tulsa, Oklahoma, according to real parties in interest. Ross does substantial business in New Mexico.

---

[1]Pursuant to rule 12(a) of the California Rules of Court, this court has caused the original superior court files in these proceedings to be transmitted to this court and made a part of the record on appeal.

[2]Ross acquired the plane from Air South, an air taxi operation. Air South's place of incorporation and principal place of business does not appear in the record provided by Beech.

Beech is a Delaware corporation with its principal place of business in Wichita, Kansas. Beech contends it does little or no business in California. Real parties in interest contend Beech does "substantial business" in California.[3] Adams-Rite is a California corporation with its principal place of business in Glendale, California.

Lawsuits resulting from the above accident include the Aanestad/Bean and Clark/Zettel wrongful death actions originally filed in the Superior Court of Orange County, and the actions of the remaining passengers for wrongful death filed in the United States District Court for New Mexico, under the heading Langham v. Beech Aircraft Corporation, No. 74-CIV.[4]

The Aanestad/Bean and Clark/Zettel actions were filed December 8, 1972, and February 15, 1973, respectively; in each of them the defendants named were Beech Aircraft Corporation, the Hartwell Corporation,[5] and 10 Does. Adams-Rite was later served as Doe I. Liability was based upon negligence, breach of warranty, and strict liability in tort.

On April 10, 1973, Beech moved to dismiss the Aanestad/Bean action upon grounds of lack of jurisdiction or, in the alternative, forum non conveniens.[6] This motion was denied upon the grounds that Beech's

[3]This statement is "supported" by the April 6, 1973, affidavit of J. A. Elliott, a vice president, treasurer and director of Beech Aircraft Corporation, made in support of Beech's motion to dismiss for lack of jurisdiction or forum non conveniens. In the affidavit, Elliott stated that Beech Aircraft Corporation owns all the outstanding shares of Beech Holdings, Inc., a Kansas corporation, with its principal place of business in Wichita, Kansas. Beech Holdings owns all the outstanding stock of Beechcraft West, a California corporation, located in Van Nuys, California. Beechcraft West owns all the outstanding shares of stock of Mission Beechcraft, Inc., a California corporation, with its principal place of business at Santa Ana, California. Beech Aircraft Corporation does not sell the aircraft it manufactures in California; rather all orders from dealers and distributors for aircraft are accepted by Beech Aircraft at its principal place of business at Wichita, Kansas, and title to all aircraft is transferred in Kansas.

Real Parties in Interest also contend, without dispute, that Beech advertises in California.

[4]Another action is Bean v. Ross Aviation, Inc. No. 75-322 CIV, wherein the Bean wrongful death claimants proceeded separately against Ross in the United States District Court for New Mexico.

[5]The superior court files do not indicate any appearance by Hartwell Corporation as a defendant. No party mentions Hartwell in its brief; accordingly, we will assume for the purpose of this proceeding that Hartwell is not a party to these actions.

[6]In general, Beech's motions with respect to the Aanestad/Bean action were the same as its motions in the Clark/Zettel action. Except as otherwise indicated, the substance of Beech's motions will be treated as applying to both plaintiffs' actions.

counsel had previously filed a general demurrer to the complaint, thus submitting Beech to the jurisdiction of the court. On April 19, 1973, counsel stipulated that an attempted removal of the actions to the federal court was improper since no complete diversity existed. Subsequently, both Beech and Adams-Rite filed demurrers to the "purported fourth cause of action" of the Clark/Zettel complaint, which sought punitive damages, upon the ground that "Under California Law, Punitive Damages May Not Be Recovered in an Action for Wrongful Death." Beech's demurrer was filed May 17, 1973. Thereafter, on June 1, 1973, this demurrer was placed off calendar due to the court's granting of Adams-Rite's motion to change venue to Los Angeles County.

On February 27, 1973, the Orange County Superior Court sustained Beech's general demurrer to the "purported Fourth Cause of Action" in the Aanestad/Bean complaint. Aanestad/Bean subsequently amended its complaint and Beech again demurred to the cause of action seeking punitive damages. In the meantime, the case was transferred to the Los Angeles court. On October 19, 1973, the Los Angeles Superior Court sustained the demurrer to the Aanestad/Bean first amended complaint, stating "California will not permit a greater recovery than is allowed by its own statutory framework." Thereupon, counsel stipulated that such ruling would apply equally to the Clark/Zettel litigation. On November 27, 1973, Beech answered the Clark/Zettel complaint, alleging contributory negligence on the part of Zettel.

On January 3, 1974, Adams-Rite answered the Clark/Zettel complaint and simultaneously filed a cross-complaint for indemnity and declaratory relief against Ross and Clark/Zettel. On March 1, 1974, Ross filed a demurrer to this cross-complaint, asserting that under either California or New Mexico law, no right of indemnity existed. On March 27, 1974, this demurrer was overruled. On May 7, 1974, Ross's motion to reconsider this ruling was denied. Thereafter, Ross filed a complaint for property damage and indemnity against Beech. On June 13, 1974, Beech countered this, filing a cross-complaint in the Ross action for indemnity against Clark/Zettel, Ross, and Adams-Rite. Ross's motion to consolidate the Clark/Zettel, Aanestad/Bean and Ross actions was granted on July 11, 1975. On October 1, 1975, Ross's demurrer to the Beech cross-complaint was sustained, the court holding that California law provided no such indemnity. In addition, a motion by Ross for judgment on the pleadings as to the Adams-Rite cross-complaint was granted with leave to amend. On November 25, 1975, Ross and Clark/Zettel's

demurrers to Adams-Rite's first amended cross-complaint were sustained without leave to amend, and a formal order of dismissal was subsequently filed on December 12, 1975.

Prior to this, on September 19, 1975, Beech moved the court for an "order of dismissal, stay or conditional dismissal on grounds of inconvenient forum, alternative motion to stay action." This motion was based upon developments arising in the *Langham* actions filed in the United States District Court for New Mexico. The sole defendant in the *Langham* action at the time of these developments was Beech.[7]

Beech had moved for judgment on the pleadings in the United States District Court for New Mexico in the *Langham* action. Beech contended that "New Mexico law . . . while providing a remedy for wrongful death to a passenger against the common carrier (Ross), *arguably made that remedy the exclusive remedy.*" The United States District Court determined this to be a correct statement of New Mexico law but ruled that the question of Ross's common carrier status was one of fact; hence, should Ross be found to be a contract carrier, an action for wrongful death would lie against Beech. After conducting a "mini-trial" upon such question, the court, dismissing the jury, determined that Ross was a "contract" carrier, and denied Beech's motion.

Nevertheless, finding the matter subject to "difference of opinion," the court certified it for interlocutory appeal to the United States Court of Appeals for the Tenth Circuit, pursuant to 28 United States Code section 1292(b). Thereafter, in August 1975, the Tenth Circuit ruled that Ross was not a contract carrier. However, the circuit court also determined that the issue whether the New Mexico wrongful death statute provided a remedy exclusively against the common carrier presented questions of New Mexico public policy subject to no controlling precedents. The court, pursuant to a New Mexico statute, certified the question to be answered by the New Mexico Supreme Court which accepted such certification.

Based on the above state of facts, Beech sought (1) a stay of the California actions pending resolution of the issue by the New Mexico Supreme Court, or (2) in the alternative, a dismissal, claiming forum non conveniens.[8]

---

[7]Ross settled prior to such developments, while Adams-Rite had not been made a defendant at the time of such developments.

[8]No attempt will be made herein to deal with the merits of Beech's motion to dismiss based on forum non conveniens.

On September 29, 1975, real parties in interest filed their opposition to Beech's motions. Basically, they asserted that no plaintiff was a party to the New Mexico action; therefore, they could not be bound by the New Mexico ruling. Moreover, any dismissal would result in extreme prejudice since the statute of limitations had run on any new action by plaintiffs. Further, no dismissal was warranted since the court could, if need be, apply New Mexico law. Beech's motions were denied on September 30, 1975.

On October 3, 1975, Beech filed the instant motion for summary judgment. This motion sought to force the court to declare New Mexico law "the applicable law in determining the rights and liabilities of the parties," and to hold that New Mexico law provides that "damages for wrongful death arising out of the death of a passenger on a public conveyance may only be recovered from the common carrier which owned the conveyance." Said motion was based upon the "Declarations, Affidavits and Exhibits" and "all the papers, pleadings and files of the court in this and recently consolidated actions."

On October 23, 1975, real parties in interest Aanestad/Bean filed their opposition to the motion. No affidavits were filed in opposition, the parties relying on the affidavits and exhibits previously filed with the court. The factual issues, previously stated, were the contentions that Ross's principal place of business was in Oklahoma and that Beech did substantial business in California, including the advertisement of the Queenair model aircraft to California citizens. Summary judgment was opposed on the grounds that (1) California law should govern the action, (2) should New Mexico law apply, the court would still need to decide whether Ross was a common carrier, the factual determinations of the New Mexico courts not being binding, and (3) should New Mexico law apply, such that a wrongful death action is precluded, such law should not be enforced since it violates both the California public policy encouraging manufacturer strict liability and the Fourteenth Amendment to the United States Constitution.

On October 28, 1975, a hearing was held on the motion. Basically, the parties, relying on the papers filed, addressed the choice of law issue as it bore upon the existence of a wrongful death cause of action against Beech. Some discussion was directed to whether New Mexico's law regarding indemnity would apply insofar as Adams-Rite was a party, with counsel for Ross asserting that such issue was not adequately

briefed in the motion for summary judgment.[9] Counsel for Beech concurred in this evaluation of the motion.[10]

On November 7, 1975, the court, by minute order, denied the motion for summary judgment, citing *Hurtado* v. *Superior Court,* 11 Cal.3d 574 [114 Cal.Rptr. 106, 522 P.2d 666].

Beech's petition for writ of mandate, seeking to compel the court to designate New Mexico law applicable to the consolidated cases, was filed November 26, 1975. On November 18, 1975, in *Langham* v. *Beech Aircraft Corporation,* 88 N.M. 516 [543 P.2d 484, 489], the New Mexico Supreme Court had announced its ruling on the certified question, finding that: "The manufacturer of a 'public conveyance' can be held liable for damages where the passengers died as a result of defects in the conveyance, and the remedy provided . . . against the 'owner' of a defective 'public conveyance' does not provide the only remedy."

Therefore, under either New Mexico or California law a cause of action for wrongful death existed against Beech. On December 23, 1975, this court denied petitioner's writ of mandate.

Petitioner thereupon filed a petition for hearing in the California Supreme Court, stating that it was "unmistakenly clear" that the lower court's November 7, 1975, order applied California law (due to the *Hurtado* citation), and that "an intolerable trial situation" exists "in that none of the parties in any of the actions know what law will govern." On February 11, 1976, the petition for hearing was granted. Thereafter, on April 23, 1976, the Supreme Court ordered the proceeding transferred back to this court "with directions to issue an alternative writ of mandamus to be heard before that court when the proceeding is ordered on calendar. (See *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128

[9]Counsel for Ross stated to the court:
"I believe if the court is influenced by the indemnification, that we would like some opportunity to indicate to the court that that really isn't clear in New Mexico.
"I am not so sure we have a clear right for indemnification if the New Mexico law applies.
"We haven't looked at it from that standpoint.
"The motion for summary judgment wasn't directed to us, necessarily, on the indemnification. So I think that point should be looked into.
"And I am not so sure that it is clear that we have a right for indemnification."

[10]Counsel for Beech stated to the court:
"To be honest with you, I would rather not get bogged down into what the potential rights of these plaintiffs might be in indemnity, and in the area of contribution.
"The issue before this court now is, who has the preponderate interest in applying their wrongful death statute to these various defendants."

Cal.Rptr. 215, 546 P.2d 719])." On April 30, 1976, this court, following the order of the Supreme Court, issued the alternative writ of mandate.

## Issues

Petitioner requests this court to find, under established California choice of law principles, that the lower court's "application" of California law constituted an abuse of discretion, and that the court should declare New Mexico law applicable to these proceedings. Real parties in interest contend that the lower court made no finding on the choice of law applicable, that it would be premature for such decision to be made "because evidence will have to be introduced prior to the determination of choice of law," and that California's law should govern determination of the issues presented in this litigation.

## Discussion

### No Decision on the Choice of Law
### Applicable Can Be Inferred from the
### Trial Court's Ruling

Beech contends that the court's November 7, 1975, ruling denying summary judgment was in fact an adjudication that California law governed this action.

We disagree. Certainly, either New Mexico or California law justified the court's refusal to enter summary judgment in favor of Beech on the wrongful death cause of action. Under New Mexico law, even before the November 18, 1975, ruling of the New Mexico Supreme Court, the factual issue of contract versus common carrier remained to be determined, as well as issues going to the constitutionality of denying a cause of action against manufacturers of equipment used by common carriers. The citation of *Hurtado* v. *Superior Court*, 11 Cal.3d 574 [114 Cal.Rptr. 106, 522 P.2d 666], is not decisive since *Hurtado* merely holds that a "governmental interest approach" determines choice of law, and does not thereby establish the trial court's use of California law in denying the motion. Further supporting this view is the trial court's failure to affirmatively declare California law controlling. Accordingly, we find the court's denial of Beech's motion not to constitute an adjudication that California law applied to this action.

### Choice of Law Is a Proper Subject
### for Summary Judgment When
### a Sufficient Showing Is Made

Petitioner next contends that no triable issue of fact exists as to choice of law; hence the denial of the motion for summary judgment is an error in law, thereby "automatically" constituting an abuse of discretion. (See *Whitney's at the Beach* v. *Superior Court,* 3 Cal.App.3d 258 [83 Cal.Rptr. 237]; *Roman Catholic Archbishop* v. *Superior Court,* 15 Cal.App.3d 405 [93 Cal.Rptr. 338].) ■ In contrast, real parties in interest contend that such a determination of choice of law is an improper subject for summary judgment. The statutory language is not explicit in this respect; a review of the legislative history of present section 437c, Code of Civil Procedure,[11] is, therefore, necessary.

Former section 437c[12] of the Code of Civil Procedure, governing the summary judgment proceedings, read in pertinent part as follows: "If it appears that such defense applies only to a part of the plaintiff's claim, or that a good cause of action does not exist as to a part of the plaintiff's claim, or that any part of a claim is admitted or any part of a defense is conceded, the court shall, by order, so declare, and the claim or defense shall be deemed established as to so much thereof as is by such order declared and the cause of action may be severed accordingly, and the action may proceed as to the issues remaining between the parties. No judgment shall be entered prior to the termination of such action but the judgment in such action shall, in addition to any matters determined in such action, award judgment as established by the proceedings herein provided for. A judgment entered under this section is an appealable judgment as in other cases."

While no case authority expressly defined "part of the plaintiff's claim," "part of a defense," "cause of action may be severed," or "issues remaining," such language implied that partial summary judgment could only be granted as to that portion of the action that constitutes an entire legal claim (a cause of action) or defense. This view was stated by Judge Ernest J. Zack in his article, *California Summary Judgment: the Need for Legislative Reform* (1971) 59 Cal.L.Rev. 439, 451: "In California, partial summary judgment is probably available only as to that portion of the action that could be severed *vertically* from the other portions in issue—a single cause of action, or portion thereof, for which all these legal

[11]Added by Statutes 1973, chapter 366, section 2, page 807.
[12]Repealed by Statutes 1973, chapter 366, section 1, page 807.

elements are shown to exist. 'A part of a claim' would, then, not include a legal element which could be severed *horizontally*—for example, the single issue of whether there is a contract. Thus, such an element could not be the subject of a partial summary judgment proceeding initiated by a plaintiff. Under federal practice, issues can be determined singly, or in groups—the severance can be vertical or horizontal. [Fn. omitted.]"

Judge Zack proposed a legislative amendment to section 437c to remedy this specific problem (59 Cal.L.Rev. at p. 476): "*If it appear from the affidavits that such defense applies to less than all the issues raised by plaintiff's claim, or that legal or factual support does not exist as to one or more issues raised by the plaintiff's claim, or that any of such issues is admitted or any issue raised by such defense is conceded, the court shall, by order, so declare, and the claim or defense shall be deemed established as to such issues as are by such order declared and the cause of action or defense may be* severed accordingly, and the action may proceed as to the issues remaining between the parties. No judgment shall be entered prior to the termination of such action but the judgment in such action shall, in addition to any matters determined in such action, award judgment as established by the proceedings herein provided for. The word 'action' as used in this section shall be construed to include all types of proceedings. *The word 'issue' as used in this section shall be construed to refer to any matter of material fact or law necessary to establish a cause of action, or a defense thereto, in a proceeding.*" According to its author, this amendment would allow "summary judgment on less than all of the elements of a claim. If he can convince the court there is no triable issue as to one element he is entitled to partial summary judgment on any part of the claim which such finding defeats . . . ." (*Id.,* p. 476.)

In 1973, former section 437c of the Code of Civil Procedure was repealed and the new section 437c was added. This new section provides in pertinent part:

"If it appears that the proof supports the granting of such motion as to some but not all the issues involved in the action, or that one or more of the issues raised by a claim is admitted, or that one or more of the issues raised by a defense is conceded, the court shall, by order, specify that such issues are without substantial controversy. At the trial of the action the issue so specified shall be deemed established and the action shall proceed as to the issues remaining.

" . . . . . . . . . . . . . . . . . . . . . . .

"Except where a separate judgment may properly be awarded in the action, no final judgment shall be entered on a motion for summary judgment prior to the termination of such action, but the final judgment in such action shall, in addition to any matters determined in such action, award judgment as established by the summary proceeding herein provided for.

"A summary judgment entered under this section is an appealable judgment as in other cases."

As the similarity in language demonstrates, this new section was based in relevant part upon Judge Zack's recommendations. (See also State Bar CAJ (Committee on Administration of Justice) Interim Rep. (Jan. 1973); 1972 State Bar Annual Rep., 1972 Conference Resolution 9-1; CAJ Annual Rep. for 1971-1972.) As stated in the CAJ Annual Report, "the purpose of the revision is to encourage the trial courts to dispose of as many issues as possible prior to the trial of an action."[13]

In accordance with this stated purpose, commentators have interpreted the change of wording from "cause of action" to "issues" as encouraging the salutory "use of partial summary judgments . . . . Since the length of a trial is directly related to the number of issues which must be argued, any procedure which can get major issues adjudicated in advance of the actual trial should result in saving considerable time and expense." (Comment, *Civil Procedure, Summary Judgments,* 5 Pacific L.J. 289, 294-295.) In Zack, *The 1973 Summary Judgment Act—New Teeth for an Old Tiger* (1973) 48 State Bar J. 654, 659, this section is construed as allowing relief on any single material issue, such as whether, in a breach of contract case, there is a contract, a breach, a release, etc.

We find nothing inherently unique about a conflict of laws issue which would preclude a court, upon a proper showing, from determining by summary judgment procedure which law should be applied. Certainly the major purpose of the statute, adjudicating issues in advance of trial so as to save considerable time and expense, would be served. Moreover, a similar procedure was implicitly approved by our Supreme Court in *Hurtado* v. *Superior Court, supra,* 11 Cal.3d 574. In *Hurtado,* the superior court bifurcated the issues of choice of law and liability, conducting a separate trial on the former wherein, based on the factual findings, a determination was made to apply California law. Hurtado's petition for

---

[13]As originally proposed, this section contained a statement entitled "Legislative Purpose in Summary Judgment Act Revision" wherein the above quoted "purpose" was recited. While the State Bar's recommended language for section 437c was adopted in full, the "Legislative Purpose" statement was not so enacted.

writ of mandate challenged this decision. The Supreme Court's decision denying the petition for peremptory writ left the case in a posture where the issue of liability could thereafter be tried under California law.

The practical effect of the · *Hurtado* procedure is that the facts necessary to the choice of law determination are found first; the court determines the choice of law and later proceeds to try the facts necessary to determine liability in accordance with such choice. This order of disposition of these issues is equally advantageous when there is no triable issue as to the facts bearing upon the choice of law. Accordingly, summary disposition is mandated upon a proper showing, i.e., "that there is no triable issue as to any material fact . . ." determinative of the choice of law. No bifurcated trial is necessary; the court, based upon the established facts, determines the applicable law. Should such determination be dispositive as to an entire cause of action (for example, that New Mexico law is applicable and it precludes an action for wrongful death against Beech), then such determination might result in an appealable judgment (if there is no other cause of action between the same parties). Should the determination be dispositive as to some but not all of the issues necessary to dispose of any cause of action (for example, that California law need be applied and it permits wrongful death claims), then such issue would be deemed established and the action would proceed to trial as to the issues remaining. █ Determinations of the second type do not result in appealable judgments. Determinations of either type that are not appealable are subject to review by writ of mandate upon an appropriate showing of the need therefor. (See *Hurtado, supra,* 11 Cal.3d at p. 579; *Whitney's at the Beach* v. *Superior Court, supra,* 3 Cal.App.3d at p. 266.)

We reject real parties in interest's assertion that any such determination not dispositive of an entire cause of action would not be binding on the trial judge. Section 437c of the Code of Civil Procedure expressly provides that such issues may be "deemed established" with the action proceeding only "as to the issues remaining." Accordingly, unless a challenge is made by way of writ, the trial court would have no power to reevaluate such determinations.

The Choice of Law Issue as to the
Existence of a Wrongful Death Claim
*Against Beech Has Become Moot*

█ When petitioners first moved for summary judgment, New Mexico law arguably differed from California law in that it perhaps

denied the existence of a wrongful death cause of action against the manufacturer of the equipment of a common carrier. Subsequent to the lower court's order denying a summary judgment and prior to petitioner's initiation of this proceeding, the New Mexico Supreme Court declared that such interpretation of New Mexico law was erroneous, saying in this respect: "The manufacturer of a 'public conveyance' can be held liable for damages where the passengers died as a result of defects in the conveyance . . . ." (*Langham, supra,* 543 P.2d at p. 489.) Thus, the laws of California and of New Mexico are now identical in this respect. Under either state's law a cause of action for wrongful death will lie against Beech.

Such being the case, the choice of law issue as regards the existence of the wrongful death claim is moot. As stated in *Hurtado* v. *Superior Court, supra,* 11 Cal.3d at p. 580: "The fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical."

Petitioners Have Not Made the Proper Motion and
Showing Necessary to Mandate the Superior Court's
Determination of Choice of Law as to Issues Other
than the Issue as to the Existence of a Wrongful
Death Claim

The mootness of the choice of law issue as to the existence of a wrongful death claim does not affect the resolution of other choice of law issues in the case. Each choice of law issue requires separate consideration.

California's use of the governmental interest approach requires "an analysis of the respective interests of the states involved . . . the objective of which is 'to determine the law that most appropriately applies *to the issue involved.*' (Italics added.) *Reich* v. *Purcell, supra,* [67 Cal.2d 551 (63 Cal.Rptr. 31, 432 P.2d 727)] at p. 554." (*Hurtado* v. *Superior Court,* 11 Cal.3d 574, 579-580; see also *Bernhard* v. *Harrah's Club,* 16 Cal.3d 313, 316 [128 Cal.Rptr. 215, 546 P.2d 719].) Petitioner has asserted that differences in California law and New Mexico law exist as to (1) product liability substantive law, (2) indemnity, and (3) contribution between

defendants.[14] Assuming that there are such differences, the respective interests of the states involved relating to these issues are not necessarily the same as those concerning the existence of wrongful death claims. Hence, the governmental interest approach requires a separate analysis with respect to each of these issues.

This position has been impliedly supported by Beech in another context. Thus, Beech successfully asserted that California law should control insofar as punitive damages were concerned while contending that New Mexico law should control the issue as to the existence of an action for wrongful death.

Moreover, such a position is inherent in the forum's application of its "procedural" rules when applying another state's "substantive" law. Commentators have urged that the forum state applies its own procedural law because, as the forum, it is the only state with an interest in having its procedural law apply. (See Horowitz, *The Law of Choice of Law in California—a Restatement* (1974) 21 UCLA L.Rev. 719, 742.) The choice of law question must, therefore, be examined individually as to each issue.

In ruling on the sufficiency of petitioner's showing with respect to the choice of law issues which have not been rendered moot, cognizance must be taken of the changes to Code of Civil Procedure section 437c which went into effect January 1, 1974, bearing upon the showing required to establish the nonexistence of triable issues. These changes have, to some extent, liberalized the showing necessary.[15] They have not,

---

[14]Petitioner claims (1) that in product liability, "Unlike California's liberal strict liability doctrine, New Mexico retains the 'unreasonably dangerous' standard promulgated by the American Law Institute, in section 402A of the Restatement of Torts," (2) in indemnity, "New Mexico law merely requires a showing of active/passive negligence . . . [while] California law . . . requires the additional showing of either a legal or 'special' relationship between the parties, and (3) that "New Mexico statutorily allows for contribution while California does not."

[15]Section 437c now provides in pertinent part that (1) a granting of the motion is now mandatory in proper cases where "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," (2) a "court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence," in determining whether there are such triable issues, and (3) with certain discretionary exceptions, "summary judgment shall not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment . . . ." The statute also provides the court with discretionary powers, i.e. "If it appears from the affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or

however, changed the following existing rules, among others: (1) the strict evidentiary and substantive requirements for the moving declarations (*Blair* v. *Pitchess,* 5 'Cal.3d 258, 284-285 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]), (2) the duty of a moving party to set forth with particularity competent evidentiary facts sufficient to establish every element necessary to a ruling in his favor, the opposing party having no obligation to file counteraffidavits to defeat the motion, unless the moving party meets this burden (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles,* 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724]), (3) the liberal construction of opposing affidavits if filed (*Lacy* v. *Laurentide Finance Corp.,* 28 Cal.App.3d 251, 256 [104 Cal.Rptr. 547]), and (4) the opposing party's ability to rely on his adversary's pleadings to establish facts not contained in his own affidavits (*Parker* v. *Twentieth Century-Fox Film Corp.,* 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615]). (See Zack, *The 1973 Summary Judgment Act, New Teeth for an Old Tiger,* 48 State Bar J. 654.)

██ While real parties in interest contend that they "would certainly not stipulate" to "facts" set forth in the Beech affidavits, these rules require them, if the moving parties' affidavits are sufficient to grant summary judgment, to file counteraffidavits demonstrating factual differences. ██ When no affidavits are filed in opposition, the court is entitled to accept as true the facts alleged in the movant's affidavits if such are within the affiants' personal knowledge and are ones to which he could competently testify. (*Truslow* v. *Woodruff,* 252 Cal.App.2d 158, 164 [60 Cal.Rptr. 304].) ██ However, real parties in interest's failure to file any counteraffidavits does not serve to cure deficiencies in petitioner's showing.

Whether or not sufficient "evidentiary facts" were set forth with respect to the choice of law as to the existence of a wrongful death cause of action, the affidavits and moving papers were deficient in respect to the other claimed differences in New Mexico and California law—products liability, indemnity and contribution.

Though petitioner's motion sought a declaration that "New Mexico law is the applicable law in determining the rights and liabilities of the parties," the sole reference in the moving papers to any but the wrongful

order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as may be just."

death issue appears in Beech's "Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment," wherein Beech states: "New Mexico has a predominant interest in applying its product liability law (and its indemnity law) to defendant Beech who has sold a product in New Mexico to a New Mexico defendant (Ross)."

No citation of authority supports this statement. Moreover, it is factually incorrect and unsupported by the affidavits. First, the record does not demonstrate that Beech sold the product to Ross in New Mexico. In fact, Beech's petition for writ of mandate states that Beech sold this particular aircraft to a distributor and that it eventually was acquired by Air South (whose place of incorporation and principal place of business Beech does not name) who in turn sold it to Ross; second, the affidavit of J. A. Elliott (see fn. 3, *ante*) indicates all of Beech's sales technically were made in Kansas. Last, Ross is not a defendant in either the instant actions or the New Mexico actions; rather, it is a plaintiff in the consolidated California actions. Consequently, insofar as Beech's motion may have sought a declaration that New Mexico law should apply to the issue of products liability substantive law, indemnity, and contribution, we find Beech's moving papers and affidavits to be insufficient to justify such a ruling, since neither party adequately addressed the issues and facts surrounding these aspects of the case. Indeed, Beech's counsel admitted at the hearing on the motion that he did not want to "get bogged down" into such matters, the issue before the court being "who has the preponderate interest in applying their wrongful death statute . . . ." Accordingly, we find the court correctly denied summary judgment on these issues, nor can they be decided in this court on the present record. The solution of these issues should be left to further proceedings in the trial court where all parties may be given an opportunity adequately to present the facts and brief the issues relating thereto.

The Lower Court Should Weigh the
Following Facts and Policies in
Determining Choice of Law

As heretofore pointed out, the showing made in the trial court does not permit definitive disposition of the remaining choice of law issues. The following general observations are submitted for the guidance of the trial court in any further proceedings therein.

General rules of choice of law were set forth in *Hurtado* v. *Superior Court, supra,* 11 Cal.3d at p. 581: "As the forum, California 'can only apply its own law' (*Reich* v. *Purcell, supra,* at p. 553). ▇ When the forum undertakes to resolve a choice-of-law problem presented to it by the litigants, it does not choose between foreign law and its own law, but selects the appropriate rule of decision for the forum to apply as its law to the case before it. (*Reich* v. *Purcell, supra,* at p. 553.) Therefore, when the forum state undertakes its 'search to find the proper law to apply based upon the interests of the litigants and the involved states' (*Reich* v. *Purcell, supra,* at p. 553), it is understood that '[n]ormally, even in cases involving foreign elements, the court should be expected, as a matter of course, to apply the rule of decision found in the law of the forum.' (Currie, *op. cit. supra,* at p. 183.) 'Only "when it is suggested that the law of a foreign state should furnish the rule of decision" must the forum determine the governmental policy of its own and the suggested foreign laws, preparatory to assessing whether either or both states have an interest in applying their policy to the case.' (Kay, *Comments on Reich* v. *Purcell,* 15 UCLA L.Rev. 584, 585.) ▇ In short, generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it. (Currie, *op. cit. supra,* at pp. 1-76, 177-187; Symposium, *Comments on Reich* v. *Purcell,* 15 U.C.L.A. L.Rev. 551.)"

▇ California law should, therefore, be applied unless petitioner can show New Mexico law furthers the interest of the foreign state and that it is the appropriate law for the forum to apply.

▇ If it is shown that New Mexico does have an interest, "a true conflict" may arise as to which state's law to apply. When faced with a "true conflict," a resolution requires a determination of "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." (*Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d 313, 320.)

▇ In terms of products liability substantive law, New Mexico law apparently differs from California law only insofar as it requires, in a strict liability case, that the defect leading to the injury be "unreasonably dangerous." In *Cronin* v. *J. B. E. Olson Corp.,* 8 Cal.3d 121, 132 [104 Cal.Rptr. 433, 501 P.2d 1153], our Supreme Court rejected this require-

ment, finding it "burdened the injured [party] with proof of an element which rings of negligence." *Cronin* further states: "[P]ublic policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." (8 Cal.3d at p. 129, quoting *Escola v. Coca Cola Bottling Co.*, 24 Cal.2d 453, 462 [150 P.2d 436], J. Traynor conc.) Given this strong expression of forum interest and the presence of the California defendant, Adams-Rite, manufacturer of the defective latch, we feel that, absent a strong showing that application of New Mexico law would "further the interest" of that state, forum law should apply to the instant case. In this regard, we reject petitioner's assertion that Adams-Rite is an inconsequential defendant. A reading of the record illustrates that Adams-Rite has been actively involved in this litigation: Adams-Rite successfully moved for a change of venue to Los Angeles, was first to demur to plaintiff's fourth cause of action seeking punitive damages, and first brought Ross into the litigation. The active participation of Adams-Rite confirms the impression that its potential liability is not "inconsequential."

A similar analysis should be applied regarding the policies underlying the differences in California's and New Mexico's indemnity and contribution laws. Again, Adams-Rite should not be considered an "inconsequential defendant" for such purposes.

As hereinbefore stated, the outcome of this analysis of respective interests shall be dependent upon the showing made at any further hearing on this subject.

### Disposition

The alternative writ of mandate is discharged, and the petition for a peremptory writ is denied.

Ford, P. J., and Allport, J., concurred.

A petition for a rehearing was denied September 15, 1976, and petitioner's application for a hearing by the Supreme Court was denied October 21, 1976.