Filed 12/17/14  Weinberg v. Insatiable Assets CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HOWARD WEINBERG,<br><br>    Plaintiff,<br><br>v.<br><br>INSATIABLE ASSETS, LLC,<br><br>    Defendant and Appellant;<br><br>DB BEAVERTON LLC et al.,<br><br>    Defendants and Respondents. | B256371<br>(Los Angeles County<br>Super. Ct. No. BC460042) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

Schock & Schock and John P. Schock, for Defendant and Appellant Insatiable Assets, LLC.

Herzlich & Blum and Allan Herzlich for Defendants and Respondents DB Beaverton LLC and Drawbridge Special Opportunities Fund, LP.

Appellant Insatiable Assets, LLC challenges the judgment in the underlying interpleader action, contending that the trial court misinterpreted a settlement agreement entered in prior litigation. We reject that contention and affirm.

**FACTS**

The limited record before us establishes the following facts: In 2008 and 2009, several related actions were filed arising out of a failed development project in Sierra Madre (the development litigation). In one of those actions (L.A.S.C. Case No. BC39558), appellant, together with Dorn-Platz Properties, Inc. (DPPI), DLG Family Limited Partnership (DLG), and Greg Gallety, asserted claims for negligence and indemnity against attorney Howard Weinberg.

In December 2009, in an action separate from the development litigation, respondents DB Beaverton LLC and Drawbridge Special Opportunities Fund, LP, obtained a judgment against DPPI, DLG, and Gallety, as well as two other parties involved in the development litigation, namely, Bradley E. Barnes and Barnust Properties Ltd. (Barnust). In 2010, within the development litigation, respondents as judgment creditors secured "ORAP" liens on those judgment debtors' personal property.[1]

In February 2011, many of the parties to the development litigation entered into a settlement agreement that resolved some of their disputes, including the claims asserted by appellant, DPPI, DLG, and Gallety against Weinberg. Because

---

[1]    An ORAP lien is imposed pursuant to Code of Civil Procedure section 708.110, which provides that service of an order setting a judgment debtor examination in an action "'creates a lien on the personal property of the judgment debtor for a period of one year from the date of the order unless extended or sooner terminated by the court.'" (*Credit Suisse First Boston Mortgage Capital LLC v. Danning, Gill, Diamond & Kollitz* (2009) 178 Cal.App.4th 1290, 1293, fn. 3 & 1296.)

2

the agreement incorporated several distinct settlements, the agreement segregated the parties into different groups, for purposes of describing the terms of each settlement. Relevant here is the so-called "DPPI Group," which encompassed appellant, DPPI, DLG, Gallety, Barnes, Barnust, and several other parties.[2] The agreement was executed, inter alia, by Weinberg, the members of the DPPI Group, and John Schock, as counsel for the DPPI Group. In March 2011, the agreement was determined to constitute a good faith settlement.

The agreement included settlements between Weinberg and two groups of parties, the DPPI Group and the "SM Group." Under the terms of the agreement, Weinberg was to pay a total of $500,000 in connection with those settlements, $400,000 of which was "allocated to the DPPI Group." In pertinent part, the agreement stated: "The DPPI Group desires to settle all of their claims, disputes and differences with Weinberg, and to give Weinberg a general release conditioned upon satisfaction of the payment obligations . . . set forth . . . ." The agreement further stated: "As a condition precedent to the settlement contemplated, . . . Weinberg will cause [his] insurance carrier[] to pay . . . the DPPI Group the sum of $400,000 by check made payable to [appellant] and the Schock & Schock Clients Trust Account."

On April 21, 2011, Weinberg initiated the underlying interpleader action.[3] His complaint alleged that he held funds in which he possessed no interest, but

---

**2** The remaining named parties in the DPPI Group were One Carter Investors LLC, BGM Sierra Madre LLC, CarterStone Management, Inc., One Carter, LLC, and One Carter SPE, LLC. In addition to the named parties, the DPPI Group included "their affiliates, members and managing members . . . ." (Italics deleted.)

**3** "When a person may be subject to conflicting claims for money or property, the person may bring an interpleader action to compel the claimants to litigate their claims among themselves. [Citation.][] Once the person admits liability and deposits the money *(Fn. continued on next page.)*

3

which were subject to conflicting claims. According to the complaint, before Weinberg arranged for the $400,000 payment required under the settlement agreement, respondents asserted claims to the funds against appellant, predicated on certain judgment liens. The complaint named appellant, respondents, and Schock & Schock as parties to the action.

In September 2013, during the bench trial in the underlying action, appellant and respondents presented testimony and other evidence, and stipulated that Schock & Schock asserted no claim regarding the $400,000 settlement payment. Appellant called Gallety as a witness, who testified that he managed DPPI and several other members of the DPPI Group. According to Gallety, the judgment debtors within the DPPI Group had assigned their shares of the $400,000 settlement payment to appellant.

On February 28, 2014, the court filed its statement of decision. The court found that the judgment debtors within the DPPI Group subject to respondent's liens were DPPI, DLG, Gallety, Barnes, and Barnust, and that aside from appellant and those judgment debtors, no other members of the DPPI Group asserted any claim to the $400,000 settlement payment. The court rejected Gallety's testimony regarding the judgment debtors' assignment of their portion of the $400,000 payment, and determined that the agreement, by its "plain language," allocated the $400,000 payment to the DPPI Group. In so ruling, the court stated: "[T]he [s]ettlement [a]greement clearly states that the funds are due to [the] DPPI Group, and whatever side agreement [the] DPPI Group made with [appellant] does not

with the court, he or she is discharged from liability and freed from the obligation of participating in the litigation between the claimants." (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1122, fn. omitted.)

4

allow [the] DPPI Group to prevent its creditors from exercising their ORAP liens." The court thus awarded the portion of the $400,000 payment intended for the five judgment debtors to respondents under their liens, concluding that respondents were entitled to $333,333.33 (representing 5/6 of the payment). The court awarded the remaining $66,666.67 (representing 1/6 of the payment) to appellant. This appeal followed.

## DISCUSSION

Appellant contends that the trial court, in allocating the $400,000 payment, erred in interpreting the settlement agreement. For the reasons discussed below, that contention fails on the limited record before us.

The partial record provided by appellant circumscribes the challenges it may assert on appeal. "A fundamental rule of appellate review is that '"[a] judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."' [Citations.]" (*Conservatorship of Rand* (1996) 49 Cal.App.4th 835, 841, italics deleted.) To overcome this presumption, appellants must provide an adequate record that demonstrates error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

The record before us contains no reporter's transcript of the bench trial in the underlying action. In the absence of a complete evidentiary record, we must presume that the evidence supports the trial court's determinations in the statement of decision unless error appears on the face of the record. (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521-522; *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Furthermore, because the record discloses no objections by appellant to the statement of decision, we will imply any findings

necessary to support the court's rulings. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1132.)

Here, appellant does not challenge the court's determinations that the pertinent provisions of the agreement were "'clear and explicit,'" and that the judgment debtors did not assign their portion of the settlement funds to appellant. Rather, appellant argues that "[u]nder the unambiguous terms of the agreement, [it] was to receive the funds allocated to the DPPI Group," pointing to the provision of the agreement stating that "Weinberg will cause [his] insurance carrier[] to pay . . . the [DPPI] Group the sum of $400,000 by check *made payable to [appellant]* and the Schock & Schock Clients Trust Account." (Italics added, caps omitted.) Although appellant does not dispute the validity of respondents' liens, it maintains that the court erred in allocating the $400,000 between it and respondents, rather than ordering that the entire $400,000 be paid directly to appellant.[4]

The limited record discloses no error in the trial court's rulings. Generally, in an interpleader action, the court is authorized to resolve claims to funds asserted by judgment creditors. (*Williams v. Gilmore* (1942) 51 Cal.App.2d 684, 687-688.) As explained below, nothing before us establishes (1) that the settlement agreement barred the court from allocating the funds between appellant and respondents, or (2) that the precise allocation determined by the court was incorrect.[5]

---

[4]     The parties stipulated at trial that Schock & Schock asserted no claim to the funds, and appellant does not suggest on appeal that Schock & Schock has any separate or independent right to the funds.

[5]     Because the trial court relied on no extrinsic evidence in construing the payment provision of the settlement agreement, the interpretation of that provision presents a question of law. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) "The paramount rule governing the interpretation of contracts is to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as it is ascertainable and lawful [citation]. The [in]tention of the parties must, in the first instance, be derived *(Fn. continued on next page.)*

6

The provision specifying how the funds were to be paid, viewed in context, does not purport to afford appellant a right regarding the funds distinct from the rights of the other members of the DPPI Group.  Ordinarily, when an agreement requires a debtor to satisfy an obligation to two or more creditors by payment to one of the creditors, payment in the specified manner discharges the debtor's obligation to all the creditors, but the designated creditor holds the proceeds -- aside from the funds owed to it -- solely for the benefit of the other creditors.  (See *Cober v. Connolly* (1942) 20 Cal.2d 741, 742-745 (*Cober*).)  Civil Code section 1476 provides that  "'[i]f a creditor . . . directs the debtor to perform his obligation in a particular manner, the obligation is extinguished by performance in that manner . . . .'"  Civil Code section 1475 further provides that "'[a]n obligation in favor of several persons is extinguished by performance rendered to any of them . . . .'"  As our Supreme Court has explained, under that statute, "when one of two or more joint creditors accepts payment of the obligation, he holds the proceeds as a trustee or agent for them and is directly accountable to them as such."  (*Cober*, *supra*, 20 Cal.2d at p. 745.)

Because nothing suggests that the settlement agreement was intended to do more than impose those obligations on appellant, the agreement is reasonably viewed as establishing only a so-called "resulting trust."  "'A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest.  [Citations.]  Such a resulting trust carries out and enforces the inferred intent of the parties.  [Citations.]'  [Citation.] . . .  The trustee has no duties to perform, no trust to

---

from the language of the entire contract."  (*Leo F. Piazza Paving Co. v. Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 591, italics deleted.)

administer and no purpose to carry out except the single task of holding onto or conveying the property to the beneficiary. [Citations.]" (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 847-848, quoting *Lloyds Bank California v. Wells Fargo Bank* (1986) 187 Cal.App.3d 1038, 1042-1043.)

We therefore conclude that the agreement's provision obliging Weinberg to arrange "to pay . . . the DPPI Group" in the form of a $400,000 check "made payable to" appellant conferred no special rights on appellant, but imposed only an obligation on appellant to transfer the appropriate amount of the funds to the other members of the DPPI Group. Indeed, in view of the principles discussed above, the provision appears to have been incorporated into the agreement for the benefit of Weinberg, not appellant, as it set forth a simple method by which he could discharge his payment-related obligations to all the members of the DPPI Group.

Because the settlement agreement, by its terms, conferred no rights on appellant regarding the portion of $400,000 owed to the judgment debtors, appellant has failed to show the trial court erred in allocating that portion of the funds directly to respondents under their liens. Generally, "'[i]nterpleader is an equitable proceeding in which the rights of the parties, as between themselves, are governed by principles of equity.' [Citations.] 'The purpose of interpleader is to prevent a multiplicity of suits and double vexation. [Citation.] . . . .' [Citation.]" (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1513.) Because appellant does not dispute the validity of respondents' liens, any order by the trial court mandating the payment of the entire $400,000 to appellant would have been an idle or futile act, as appellant's sole task under the agreement was to transfer to the remaining members of the DPPI Group their portion of the funds, which were subject to the liens. Moreover, on the limited record provided, appellant may not

8

now challenge the court's determination of the judgment debtors' portion of the funds.  In sum, appellant has established no error in the judgment.

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.

We concur:



EPSTEIN, P. J.



COLLINS, J.

9