Filed 4/26/16  Ramos v. Bay Breeze #60 CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TAMMY JO RAMOS,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>BAY BREEZE #60,<br><br>        Defendants and Respondents. | D068035<br><br><br>(Super. Ct. No.<br> 37-2013-00070552-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Law Offices of Thomas Leary and Thomas Leary for Plaintiff and Appellant.

Law Office of Cleidin Z. Atanous and Cleidin Z. Atanous for Defendants and Respondents.

On October 26, 2011, plaintiff Tammy Jo Ramos tripped and fell in a parking lot owned and operated by defendants.  Ramos sued Bay Breeze #60, a California General Partnership, Bay Breeze Apartments, Dennis Pennell, Pennell Investment Properties, Inc., and Pennell Property Management Group, Inc., alleging these entities and individuals

were liable for her injuries. For ease of reference, we refer to these respondents collectively as "Owners." The only substantial disputed issue at trial was whether that fall caused relatively minor injuries to her left knee, as contended by the defense, or whether the significant knee problem she experienced nearly nine months later (which the parties stipulated would include past and future medical bills of over $200,000) was substantially caused by the fall, as contended by Ramos. The jury awarded Ramos nominal economic damages, together with some noneconomic damages, and the court rejected her argument (raised in her subsequent new trial motion) asserting the jury was required by the parties' stipulations to award her nearly $230,000.

On appeal, Ramos again asserts the pretrial stipulations were intended by the parties to require that, if the jury found she fell on October 26, 2011, and suffered *any* injury, however minor or transitory, it was required to award her all of her past and future medical costs and past lost wages even if the jury concluded her fall had no causal connection to those medical costs and lost wages.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. Facts

On October 26, 2011, Ramos tripped and fell in the parking lot of the Bay Breeze Apartments. She first sought medical attention when she called her doctor two days later, and she saw her doctor on November 1, 2011. Her doctor determined the injury to her knee should be treated by icing it, keeping it elevated, and using a topical ointment. The doctor also sent her for knee x-rays, but those x-rays were apparently not introduced at

2

trial, although they were examined by a defense expert in forming his conclusion. She did not see her doctor again until mid-February, 2012, which was principally concerning an ear infection, and she only saw her doctor one more time until the events of July 22, 2012, when she heard her left knee "snap" during an outing. During the period from October 26, 2011, through July 22, 2012, her doctor did not give her any injections, order any physical therapy, or prescribe any braces or other medical devices to treat her left knee. It also appears she missed little or no work during that period in connection with her knee.

Eight days after her knee "snapped," Ramos went to an orthopedic group for her knee pain. She was examined by an orthopedic surgeon, Doctor Owsley, who gave her a cortisone shot and performed an MRI. They subsequently discussed various treatment options, including arthroscopic surgery and possibly a total knee replacement. He performed arthroscopic surgery in late August 2012, but this did not eliminate the need for a total knee replacement at some point in the future. Owsley concluded the trauma from the fall on October 26, 2011, rather than her osteoarthritic conditions, caused the need for the arthroscopic surgery and the inevitable need for a total knee replacement.

The defense called no witnesses to dispute liability for her fall. Instead, the defense witnesses focused solely on Ramos's expert's conclusion that her knee problems were caused by her trip and fall on October 26, 2011. Dr. Rhee testified Ramos had been suffering from osteoarthritis (a degenerative joint disease) before the accident and that many of the deficiencies he found in her left knee were "clearly" or "very strong[ly]" correlated to the degenerative process rather than to a traumatic event. Dr. Vance agreed

3

with Dr. Rhee, testifying the etiology of Ramos's knee condition in August of 2012 was attributable to her ongoing degenerative condition and other chronic conditions rather than to a traumatic event nine months earlier, and explained the underlying factual basis for that opinion.

B. Trial Proceedings

Several months before trial, the parties entered into a stipulation regarding Owners' liability, which provided "the date of the injury is October 26, 2011, and [defendants] admit to 100 [percent] liability for said loss to [Ramos]. The issues remaining for the trial are the nature, extent, and value of damages sustained by [Ramos] . . . ." At that time the parties also entered into three evidentiary stipulations, which obviated the need to produce evidence of the cost of a future knee replacement or evidence of her "past wage loss" and "past medical bills." Although the parties do not direct our attention to any reference in the record clarifying the time frame as to which evidence of these past wage losses and medical bills would have been produced absent the evidentiary stipulation, we infer (from the other evidence at trial showing Ramos incurred no significant medical costs or lost work time until the summer of 2012) that these past wage losses and past medical bills involved the medical procedures (and attendant lost work time) in connection with the events of the summer of 2012.

At trial, the parties filed a "Stipulation Summary for Court to Read to Jury at Beginning of Case," which stated it did not alter the terms of the prior stipulation but merely summarized the "concepts that the jury needs to know and excludes issues and facts the jury does not need to know." That stipulation provided:

4

"[B]oth sides have 'stipulated' that [Owners are] totally and solely at fault for the October 26, 2011[,] injuries and losses to [Ramos], and no further proof on this issue is necessary . . . . Both sides have 'stipulated' that the issues remaining for the trial are the nature, extent, and value of damages sustained by [Ramos].

"Both sides have 'stipulated' that [Ramos's] past reasonable medical bills . . . are $9,772.05, and no further proof on this issue is necessary to establish this fact.

"Both sides have 'stipulated' that [Ramos's] past wage loss . . . totaled $10,127.36, and no further proof on this issue is necessary to establish this fact.

"Both sides have 'stipulated' that the reasonable and necessary amount of [Ramos's] future medical charges related to a total knee replacement surgery totals $208,000.00, and no further proof or foundation at trial is necessary to establish this stipulated and agreed-upon future economic loss."

The court, after reading the proposed language, expressed its understanding that the intent of the stipulation was that the agreement was merely "stipulating to the number . . . [¶] . . . [¶] [a]nd not stipulating that [Owners are] responsible for past medical bills or for future medical charges" and defense counsel (without objection by Ramos) stated that was "[c]orrect." However, the court expressed concern it was unclear, and that language could be added to the effect of "if you [the jury] find that [Ramos] is entitled to [these items], you've stipulated to the number," to clarify for the jury that the case was "really an issue of causation and damages."

The parties then modified the language, and the court instructed the jury pursuant to that stipulation with the following language:

"Both sides have stipulated that [Owners are] totally and solely at fault for the October 26, 2011[,] injuries and losses to [Ramos,] and no further proof on this issue is necessary . . . .

5

"Both sides have stipulated that the issues remaining for trial are the nature, extent, and value of damages sustained by [Ramos].

"If plaintiff is entitled to recover damages, both sides have stipulated that [Ramos's] past reasonable medical bills . . . are $9,772.05, and no other proof on this issue is necessary to establish this fact.

"Again, if the plaintiff is entitled to recover damages, both sides have stipulated that the reasonable and necessary amount of [Ramos's] future medical charges related to a total knee replacement surgery totals $208,000. No further proof or foundation at trial is necessary to establish this stipulated and agreed-upon future economic loss.

"Further, if the jury finds that [Ramos] is entitled to recover, it is hereby stipulated and especially agreed . . . that the amount of [Ramos's] past wage loss . . . totals $9,670.46, and no further proof of this issue is necessary to establish the fact."

During closing arguments, the parties principally argued over whether the fall in October 2011 was a substantial factor in causing Ramos the harm that manifested in the summer of 2012. The defense conceded they were liable for fall in October 2011 but argued the knee problems that manifested in 2012 were attributable to her degenerative condition and "not what happened in the parking lot."

C. <u>Verdict and Posttrial Motions</u>

During deliberations, the jury sent a note asking "are the stipulated amounts for wages (past) [and] medical (past) . . . [¶] . . . [¶] a maximum amount allowable or the amount we must use[?]" After conferring with counsel, the parties agreed to have the court answer the question, "No. The stipulate[d] amounts are the only evidence before you and those amounts are the maximum amounts." A few minutes after that response was given to the jury, the jury informed the court it had reached its verdict. The verdict

found Owners' negligence harmed Ramos, but that harm was limited to $400 in lost earnings, $600 in medical expenses, and $7,500 in past "pain and suffering" damages, and rejected Ramos's claim for other past economic loss, future economic loss, or future pain and suffering.

Ramos subsequently moved for a judgment notwithstanding the verdict or for a new trial arguing the stipulations contemplated that if the jury found Ramos was entitled to recover *anything* from Owners, the jury was compelled to award Ramos *all* of her economic losses connected with the knee problems, which became acute in the summer of 2012, even if the fall had no causal connection to such problems. The court denied the motion insofar as it requested a judgment notwithstanding the verdict or a new trial, and this appeal followed.

ANALYSIS

A. Standard of Review

Ramos's principal challenge on appeal asserts the judgment violates the written stipulations entered into between the parties, because the stipulations showed the parties intended this would be an "all or nothing" case. In construing a stipulation, the ordinary rules for the interpretation of contracts apply. (*Chapin v. Superior Court* (1965) 234 Cal.App.2d 571, 575.) Because the interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence (*Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1178), we apply de novo review to this aspect of Ramos's appeal.

7

Ramos's brief on appeal appears also to suggest the judgment must be reversed as lacking substantial evidentiary support. That challenge would require us to apply the more deferential standard of review and would require affirmance if there was any substantial evidence to support the judgment. However, we need not and do not reach this issue because we conclude it has been forfeited. As our Supreme Court held in *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881, " 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' [Citations.] [Appellants'] contention herein 'requires [appellants] to demonstrate that there is *no* substantial evidence to support the challenged findings.' [Citations.] A recitation of only [appellants'] evidence is not the 'demonstration' contemplated under the above rule. [Citation.] Accordingly, if, as [appellants] here contend, 'some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed to be waived.' " (Italics added by *Foreman*.) (Accord, *Tracy First v. City of Tracy* (2009) 177 Cal.App.4th 912, 934-935 [in substantial evidence challenge, appellant must lay out the evidence favorable to the other side and show why it is lacking; failure to do so is fatal].) Ramos's brief is entirely devoid of *any* discussion of the evidence presented to the jury, and is instead limited to a recitation of the genesis of the stipulations and her contentions below as to the impact of those stipulations. To the extent Ramos claims the judgment lacks substantial evidentiary support *apart* from the alleged conclusive impact of the stipulations, those claims are forfeited.

B. <u>General Principles</u>

It is well established that a stipulation "is conclusive upon the parties, and the truth of the facts contained therein cannot be contradicted." (*Palmer v. City of Long Beach* (1948) 33 Cal.2d 134, 141-142.) A stipulation represents "an agreement between counsel respecting business before the court [citation], and like any other agreement or contract, it is essential that the parties or their counsel agree to its terms." (*Id*. at p. 142.) " '[A] stipulation made in open court constitutes "not only an agreement between the parties but also between them and the court, which the latter is bound to enforce, not only for the benefit of those interested, but for the protection of its own honor and dignity." ' " (*Linder v. Cooley* (1963) 216 Cal.App.2d 390, 395.)

Because a stipulation represents an agreement between the parties, when a dispute arises as to its interpretation, "the ordinary rules for the interpretation of contracts apply [citation]." (*Chapin v. Superior Court, supra,* 234 Cal.App.2d at p. 575; accord, *Porreco v. Red Top RV Center* (1989) 216 Cal.App.3d 113, 119; *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341.) " 'In the interpretation of contracts, the paramount consideration is the intention of the contracting parties as it existed at the time of contracting. [Citations.] The court must examine an instrument in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words they used.' " (*Miles v. Speidel* (1989) 211 Cal.App.3d 879, 883.)

When a court must "determin[e] the intention of the parties in relation to the execution of a contract, 'the court may look to the circumstances surrounding the making of the agreement, including the object, nature, and subject matter of the writing, and

9

thereby "place itself" for this purpose in the same situation in which the parties found themselves at the time of contracting. [Citations.]' [Citation.] The contract must be construed as a whole; detached words or clauses standing alone are not controlling on the question of interpretation, each being viewed in relation to the agreement as an entity." (*Cedars-Sinai Medical Center v. State Bd. of Equalization* (1984) 162 Cal.App.3d 1182, 1187-1188.)

When there is a dispute over the interpretation to be given to contractual language, and the language is reasonably susceptible to either interpretation, the courts rely on standard rules of construction to aid in reaching an interpretation that gives effect to the mutual intention of the parties. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 798.) One aid to construction is an examination of the parties' conduct subsequent to the formation of the contract, and before any dispute arose, to determine the meaning of the disputed contractual terms. (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1449 ["the conduct of the parties after the execution of the contract, and before any controversy arose, may be considered in order to attempt to ascertain the parties' intention"] (*Oceanside 84*).) "According to Witkin, 'The conduct of the parties may be, in effect, a *practical construction* thereof, for they are probably least likely to be mistaken as to the intent.' " (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 983.)

C. Analysis

Ramos contends the language of the stipulation, by instructing the jury that "if plaintiff is entitled to recover" the parties' stipulated-to certain amounts as past wage

10

losses and past and future medical costs, must be interpreted as an agreement by the parties that the jury was required to award those amounts once it determined plaintiff was "entitled to recover" for any injury whatsoever.[1] Ramos asserts the language should be read as stating that if plaintiff is entitled to recover *anything for her October 2011 injuries,* plaintiff is entitled to recover her past wage losses and her related medical costs of over $280,000. In contrast, Owners argue the parties understood the stipulation had a more limited purpose: to streamline the trial by eliminating the need to introduce evidence on (and the jury's need to valuate) Ramos's past wage losses, past medical bills, and future medical costs of a full knee replacement surgery, in the event the jury determined the "plaintiff is entitled to recover" for the problems that manifested in the

---

[1] Ramos also argues the defense went beyond conceding mere negligence at trial and, seizing on a snippet from defense counsel's closing argument, argues the defense *also* conceded causation during closing argument. Based on this predicate, Ramos asserts the jury was required to award the stipulated amounts because both negligence *and the causal nexus between Owners' negligence and the stipulated losses* were judicially established. We reject the predicate, and therefore this argument, because the snippet relied on by Ramos does not demonstrate defense counsel conceded the 2011 fall was a substantial factor in causing her 2012 knee problems. Defense counsel said, "[W]e are not disputing liability. We've always said from the get-go she tripped [and] there was a raised crack . . . in the . . . parking lot. And she fell on her knee. And you've seen the pictures. And it hurt. No argument. But what the plaintiff is saying is that much more than that has happened." After arguing there was no causal nexus between the 2011 fall and her later problems, defense counsel turned to the special verdict form, which asked as its first question "*was [Owners'] negligence . . . the cause of injury to the plaintiff a substantial factor? I think the answer to that is yes. . . . We're not denying that [s]he tripped in our parking lot and hurt her knee.*" However, defense counsel then reiterated the jury had to determine if that led to her subsequent problems, arguing, "I don't think the surgery for the knee is connected to what happened in the parking lot." The italicized language, viewed in context, *is* a concession that Owners' negligence was a substantial factor in causing her to fall and causing whatever injuries she sustained in the parking lot, but was *not* a concession that fall was a substantial factor in her subsequent knee problems.

summer of 2012. Owners assert the language should be read as stating that if plaintiff is entitled to recover *for the problems which became manifest in the summer of 2012,* plaintiff is entitled to recover her past wage losses and her related medical costs of over $280,000.

We agree with the trial court that the language of the stipulation, when construed as a whole (*Cedars-Sinai Medical Center v. State Bd. of Equalization, supra,* 162 Cal.App.3d at pp. 1187-1188) and considering the parties' conduct before any dispute arose (*Oceanside 84, supra,* 56 Cal.App.4th at p. 1449), had the more limited purpose urged by Owners. First, the language of the stipulation as a whole becomes internally incomprehensible under Ramos's construction. The stipulation was that Owners were "solely and totally at fault for the October 26, 2011 *injuries and losses* to [Ramos] . . . ." Under Ramos's construction, once Owners admitted there were "*injuries and losses* to [Ramos]" for which Owners bore "100 [percent] liability," the jury was required to find she was entitled to recover something, and (under Ramos's reading of the stipulation) once it found she was entitled to recover *anything for her October 2011 injuries,* plaintiff is entitled to recover her past wage losses and her related medical costs of over $280,000. The only thing left for the jury to decide, according to Ramos's reading, would therefore be any pain and suffering damages. However, this interpretation leaves unexplained (and accords little content to) the language that immediately followed their stipulation that Owners were "solely and totally at fault for the October 26, 2011 injuries and losses to [Ramos]": the parties *also* stipulated "the issues remaining for the trial are the *nature, extent, and value of damages sustained* by [Ramos]." This aspect of the stipulation—that

12

the jury was to decide the "nature" and (more importantly) the "*extent*" of Ramos's injuries—has little relevance if the jury was to decide only whether she suffered *any* harm on October 26, 2011, as argued under Ramos's construction of the stipulation. In contrast, Owners' construction gives substantial content to all of the clauses of the stipulation: it admits Owners are completely liable for *some* injury from her fall on October 26, 2011, but stipulated the jury must decide whether the "nature and extent" of the injuries from that fall were limited to minor and transitory injuries (as Owners contended) or whether that fall was a substantial cause of the more extensive medical problems she suffered (as Ramos contended), and provided the jury the stipulated amount of her economic injuries if it made the latter determination.

The conduct of both parties before any dispute arose (*Oceanside 84, supra,* 56 Cal.App.4th at p. 1449) verifies they understood the stipulation was not intended to merely submit to the jury whether Ramos suffered "some" injury for which "plaintiff is entitled to recover," thereby (according to her argument) satisfying "triggering language" entitling her to the entirety of her claimed damages. Instead, the parties' evidentiary presentations showed an understanding that the jury was to decide whether the "nature and extent" of the injuries from that fall, for which Owners stipulated they were "solely and totally at fault," were limited to minor and transitory injuries or whether that fall was a substantial cause of the more extensive medical problems she suffered. The evidentiary presentations at trial were largely consumed in a battle of the experts, in which they gave competing opinions (and the medical basis for such opinions) over whether the more extensive medical problems she suffered, including the costs for a total knee replacement

13

surgery mentioned in the stipulations, were attributable to the October 2011 fall or were caused by her degenerative condition. Indeed, Ramos vigorously argued before trial that she should be entitled to an extensive cross-examination of the defense expert Dr. Vance, to bring out his censure by the American Academy of Orthopedic Surgeons, because "the defense hinges on Dr. Vance." However, Dr. Vance's opinion as to the absence of a causal link between the 2011 fall and the problems manifested in 2012 would be *irrelevant* if the parties intended their stipulation to guarantee Ramos was entitled to recover for the latter problems if she was entitled to recover for *any* injury suffered from the 2011 fall.

Under Ramos's construction, that testimony was largely superfluous because, once they jury found she suffered *any* injury (for which Owners had already conceded they were 100 percent liable), she was automatically entitled to those amounts because any causal connection between the October 2011 injury and her subsequent problems were irrelevant. The fact that both parties put on medical evidence shows they understood and intended the "if plaintiff is entitled to recover" language to merely valuate the award "if plaintiff is entitled to recover for the problems which became manifest in the summer of 2012," and not to valuate the award "if plaintiff is entitled to recover anything." The evolution of the jury instructions also confirms the parties understood the stipulation was not intended to limit the jury to deciding whether Ramos was entitled to recover anything, but instead was intended to leave to the jury the question of whether the October 26, 2011, fall was a "substantial factor" in contributing to her more extensive medical problems. In the joint trial readiness conference report, Ramos initially

14

requested a series of instructions on causation (including CACI No. 430 [the "substantial factor" instruction] and CACI No. 431 [the "multiple causes" instruction), as well as instructions on premises liability (CACI Nos. 1000, 1002, 1003 & 1011), and Owners anticipated using certain instructions on comparative fault (CACI Nos. 405 & 406). The parties' stipulation apparently obviated the need for instructions on premises liability and comparative fault, and those instructions were not given. However, the series of instructions on causation was still given to the jury, without objection by either party that the stipulation had mooted any need for the jury to decide whether the fall had a substantial causal link to Ramos's subsequent medical problems.

Additionally, the subsequent conduct by the parties in reaction to a jury question confirms they understood the language of the stipulation was not intended to entitle Ramos to *all* of the stipulated-to amounts merely because the jury concluded she was entitled to *some* recovery. During deliberations, the jury asked "Are the stipulated amounts [for past wages and past medical losses] a maximum amount allowable *or the amount we must use*[?]" (Italics added.) The court conferred with both counsel, and both the court and counsel agreed to tell the jury "the stipulate[d] amounts are the only evidence before you *and those amounts are the maximum amounts*." Ramos did not at that time claim the jury should have been informed, as she now contends on appeal, that the stipulation was intended to mean that the stipulated amount "*is the amount you must use*" if it awarded anything to Ramos, but instead consented to language that left the amount to be awarded to the jury's determination subject only to the ceiling that the stipulation placed on her recovery.

15

D. <u>Conclusion</u>

We conclude, based on the language of the stipulations as a whole and the parties' conduct during trial, the proper interpretation of the intent of the language stipulating to the amounts of Ramos's past and future wage losses and medical bills was to provide a valuation on an award *if* the jury determined her 2012 medical problems were substantially attributable to her fall in the parking lot, and not to require the jury to award those amounts merely because it found she was entitled to recover something for that fall.

DISPOSITION

The judgment is affirmed.  Owners shall recover their costs on appeal.


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


HALLER, J.


16